## Rizzo Condemnation

*Bernard Goldstone,* for condemnors.

*Edward W. Goebel, Jr.,* for appellants.

ACKER, J., January 13, 1971.—The matters presented in this case are identical in both numbers and terms. They come before this court upon preliminary objection by the condemning authority to an attempted appeal from the board of viewers filed by the property owners followed by a "Response to Preliminary Objections to Appeal from Viewers' Award" filed by Joseph Rizzo and Rose Rizzo and a motion to file amended notice of appeal nunc pro tunc. The matter was listed for argument with permission to receive testimony, as a result of which the following findings of fact are hereby made.

## FINDINGS OF FACT

1. Viewers' hearings were held in both cases on Thursday, April 6, 1970, at 10:30 a.m. The present appellants were notified, but did not appear in person or through counsel.

2. Prior to the date of hearing by the board of view, Joseph Rizzo filed a lengthy letter with the chairman of the board of view requesting a continuance for numerous reasons, all of which were denied by letter by the chairman, being of the opinion that none of the reasons had any merit.

3. On the morning of the hearing, appellant, Joseph Rizzo, appeared at the office of the chairman of the board of view and advised the chairman that he had entered suit in the United States District Court for the Western District of Pennsylvania against Andrew Duich, the paid administrator of the condemning authority, Bernard Goldstone, its attorney, and Alex Kurtanich, Jr., an independent engineer hired by the condemning authority, for alleged irregularities in the condemnation, and again requested that the case be continued. The chairman, seeing no relevancy between the Federal action and the present condemnation case, denied the continuance and the matter proceeded to hearing as scheduled, but without Joseph Rizzo being present.

4. That on September 23, 1970, the chairman of the board of view sent to Joseph Rizzo and Rose Rizzo at 51 East Ninety-ninth Street, Cleveland, Ohio, a notice that the report of view, a copy of which was enclosed, would be filed on October 9, 1970, and that the same would become final unless an appeal was filed within 30 days from the date of the report.

5. The report of view was filed on October 9, 1970, as outlined in the notice.

6. That on Saturday, November 7, 1970, while appellant, Joseph Rizzo, was traveling from Cleveland to Pittsburgh, he stopped at the main post office in Warren, Ohio, which is 35 to 40 miles from Mercer and at three minutes to five p.m. deposited two notices of appeal with adequate stamps addressed "To the Court of Common Pleas, Mercer County, Mercer County Court House, Mercer, Pa., Prothonotary."

7. Written on the bottom of each notice in ink was "November 6, -1970," and by red ink on the back of each envelope the same date.

8. The Prothonotary of Mercer County receives his mail in a box at the Mercer Post Office.

9. The mail on November 10, 1970, was picked up from the box by Deputy Prothonotary, Mrs. Wilmina Scowden, between 8:25 and 8:30 a.m. and was filed in the prothonotary's office as being received on November 10, 1970.

10. That if M. P. Eckels, Superintendent of Mails of the United States Post Office in Warren, Ohio, were called he would testify envelopes marked as those involved in this case would have been dispatched by a Star Route #44015 at about 6:50 p.m. from Warren, Ohio, on November 7, 1970, and would arrive at Youngstown, Ohio, at about 7:25 p.m. on that same day in a pouch labeled "SCF New Castle, Pennsylvania," the Sectional Mail Center for their final destination of Mercer, Pa., and that the "Tour Condition Reports" for that date show no undispatched mail on November 7, 1970, and finally, that based upon his experience as an employe of the United States Post Office, the envelope addressed and post marked in the manner of those attached, which left Warren, Ohio, on Saturday, November 7, 1970, would have and should have reached Mercer, Pa., on Monday, November 9, 1970, in the ordinary course of events and in the absence of any other factors.

11. That on November 9, 1970, the Mercer Post Office received two truck loads of mail, the first arriving at about 7 a.m. and the second 20 to 30 minutes later. That from his knowledge, all of the mail delivered on both trucks should have been and was separated and placed in the respective boxes or routes by the normal time that the deputy prothonotary arrives to pick up the mail, being 8:30 to 8:45 a.m. and that the mail involved in this case was in all probability put in the Post Office Box of the prothonotary on the tenth of November and not the ninth.

Appellants by supplemental brief on preliminary objection have requested this court to conduct a further hearing to permit the receipt of testimony of Mr. M. P. Eckels, the Postmaster of Warren, Ohio, although there was more than adequate notice given of the hearing and an opportunity to take his deposition or have him answer interrogatories. This court has, in fact, accepted the testimony of Mr. M. P. Eckels in its findings of fact for it does not believe that this testimony in anyway affects the outcome of the case.

The obligation of an aggrieved party to appeal to the Court of Common Pleas within 30 days from the date of the filing of the report is mandatory and established by statute.[1] All that is required under this section is that the appeal be filed within 30 days.[2]

In Andrews Land Company v. City of Erie, 328 Pa. 173, 194 Atl. 915 (1937), the period was from August 8 to September 5, 1935. An appeal nunc pro tunc was denied on the grounds that it is well settled that a court may not extend the period fixed by statute for appeal.[3]

In Hutchinson v. City of Philadelphia, 12 D. & C. 420 (1929), an appeal on the thirty-first day was declared defective even though appellant had an affidavit from the stenographer who prepared and filed the viewers' report that the matter was prepared and filed one day later. This, however, was held insufficient to overcome the presumption of regularity of the stamp of the prothonotary.

---

[1] Act of June 22, 1964, Spec. Sess. P. L. 84, Sec. 515, art. V, 26 PS §1-515.

[2] Miller Estate v. Department of Highways, 424 Pa. 477, 227 A.2d 679 (1967).

[3] See also St. Clair Borough v. Souilier, 234 Pa. 27 (1912); Singer v. Delaware, Lackawanna and Western Railroad Company, 254 Pa. 502 (1916).

In a per curiam opinion in King Appeal, 204 Pa. Superior Ct. 490, 205 A.2d 629 (1964), affirming 34 D. & C. 2d 371, an attempted appeal 31 days after the viewers' report was filed was likewise held to be too late. It was recognized in King Appeal, supra, however, as well as in other cases,[4] that in the event of fraud or where a party has been prevented from appealing by the wrongful or negligent acts of a court official, an extension may be granted.

Defendant cites but one Pennsylvania case where the Supreme Court granted an extension upon an appeal. Nixon v. Nixon, 329 Pa. 256, 198 Atl. 154 (1938), concerned an appeal from the Superior to the Supreme Court. There, however, the prothonotary failed to notify the aggrieved party of the decision of the Superior Court and it was, therefore, felt that an appeal beyond the 45-day period provided by statute should be permitted. There is no allegation or factual support for any contention of misconduct by the prothonotary in the instant case.

Although not an appeal in a condemnation case, our Supreme Court has recently held in a factual situation not dissimilar from that here present that the day when an appeal is received in the prothonotary's office and docketed and not the day it is mailed, is determinative as when an appeal is filed. So in Erie Redevelopment Authority v. Pulakos, 439 Pa. 157, 267 A.2d 873 (1970), appellant's preliminary objections in a condemnation case were overruled on September 11, 1969. Although he filed a petition to vacate, open and set aside the order, there was no stay of execution of the proceedings. The petition was denied on October 23rd. The appeal was filed on October 28th. Appellant had 45 days from any final order

---

[4] Andrews Land Company v. Erie, supra; Singer v. Delaware, Lackawanna and Western Railroad Company, supra.

or judgment to appeal. The forty-fifth day was, therefore, October 26th, which fell on a Sunday. Appellant then had the next day of Monday, October 27th, under the Statutory Construction Act in which to perfect his appeal. However, the appeal was actually received by the Prothonotary of the Supreme Court on the forty-seventh day, being Tuesday. It was declared to be untimely because the date it was received in the prothonotary's office was October 28th. The court held, page 159, "This is the determinative day as to when the appeal *was filed.*"

Likewise, in Malis v. Lieberman, 439 Pa. 602, 266 A.2d 745 (1970), the day when an opinion and order was filed from a court as opposed to the day that it was received by mail or published in a legal periodical controls the commencing ˛of the appeal period. Therefore, it makes no difference as to when the appeal was mailed. The only critical date is when it was, in fact, filed.

Appellant, however, cites several Federal cases. They are of no assistance. Johnson v. Esso Standard Oil Company, 181 F. Supp. 431 (W.D. Pa., 1960), permitted the receipt of a paper when it was put into the clerk's mail delivery basket within the prescribed time limit, but not picked up or filed until the following morning. Likewise, in Johansson v. Towson, 177 F. Supp. 729 (D.C.M.D. Ga., 1959), an accident occurred on August 25, 1956, and the statute of limitations ran two years later. It was proven that the complaint was placed in the mailbox of the Federal clerk on August 23rd, but the box was not opened until August 25th. It was held that the complaint was timely.

In Freeman v. Giacoma Costa Fu Audrea, 282 F. Supp. 525 (E.D. Pa. 1968), the question was whether an action had been filed during the lifetime of plain-

tiff. The attorney was at the office of the clerk at 12:15 p.m. prepared to file the papers. Plaintiff died at 12:30 p.m. The assistant clerk arrived at 12:45 to 12:50 p.m. and opened the office and received the paper at 1 p.m. It was held that being present at the office prepared to do business was sufficient to indicate a filing during the lifetime of decedent.

Finally, appellant cites Perrine v. Heishman, 253 F. Supp. 68 (M.D. Pa. 1966), which held that plaintiff was barred by the statute of limitations for there was no post office box where delivery could be made other than where the paper was actually filed. It was held to be too late.

Finally, appellant contends that the amended notice of appeal should be permitted to be filed nunc pro tunc because the condemnor is not in any way harmed. In view of the authority cited previously in this opinion, the issue of harm is not germane. The court does not have any discretion in extending the period. Therefore, the amendment must be denied.

## ORDER

And now, January 13, 1971, the preliminary objection of the condemnor, Redevelopment Authority of the County of Mercer for Urban Renewal Purposes, is granted. The motion to file an amended notice of appeal nunc pro tunc of Joseph Rizzo and Rose Rizzo is denied.

